[No. G016834. Fourth Dist., Div. Three. Nov. 18, 1996.]

Conservatorship of the Person and Estate of RODNEY M.
WILLIAM A. BAKER, as Public Guardian, etc., Petitioner and Appellant,
v.
RODNEY M., Objector and Respondent.

COUNSEL

Terry C. Andrus, County Counsel, Laurence M. Watson, Chief Assistant County Counsel, Elizabeth L. Kolar and Ward Brady, Deputy County Counsel, for Petitioner and Appellant.

Donna L. Groman for Objector and Respondent.

OPINION

SONENSHINE, J.—

*Introduction*

In *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1], our Supreme Court held a jury must *unanimously* agree a person is gravely disabled before a conservator can be appointed under the Lanterman-Petris-Short Act (Act or LPS Act).[1] The court did not consider the issue we now address: Is jury unanimity required to find a person is *not* gravely disabled? For reasons we now explain, we hold such a finding can be supported by a three-fourths majority of the jury. Because the jury in this case found by a vote of 11 to 1 that Rodney M. was not gravely disabled, the trial court properly dismissed the petition to reappoint a conservatorship over him.

*Procedural Background*

William A. Baker, Orange County Public Guardian (Public Guardian), was appointed conservator of Rodney M. and his estate in 1990 and reappointed in that capacity on an annual basis until 1994. In that year, the Public Guardian petitioned for reappointment on the basis Rodney M. "is still gravely disabled as a result of a mental disorder or impairment by chronic alcoholism and is unwilling to accept or incapable of accepting treatment voluntarily."[2] The jury was unable to reach a unanimous decision on this issue, and the court declared a mistrial. Upon learning the jury had voted 11 to 1 in favor of finding he was not gravely disabled, Rodney M.

---

[1] See Welfare and Institutions Code section 5350 et seq. All further statutory references are to the Welfare and Institutions Code unless noted otherwise.

[2] Section 5008, subdivision (h)(1)(A) defines "gravely disabled" as a "condition in which a person, as a result of a mental disorder, is unable to provide for his or her basic personal needs for food, clothing or shelter."

moved to dismiss the petition.[3] The court granted the motion, ruling a three-fourths majority was sufficient to find Rodney M. not gravely disabled.

*Analysis*[4]

## The Statutory Framework

The LPS Act is silent as to whether the jury must unanimously agree on the issue of grave disability.[5] "[H]owever, the Act incorporates by reference Probate Code procedures for conservatorships. (§ 5350, subd. (d).) The Probate Code provides for factual determinations by a three-fourths majority . . . . (Prob. Code, § [1000; Cal. Const., art. I, § 16].) Thus, the Legislature has provided for less than unanimous jury verdicts in grave disability cases." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 239 (conc. and dis. opn. of Clark, J.).)

## The Roulet Decision

In *Roulet,* our Supreme Court considered whether allowing a three-fourths majority to find a proposed conservatee gravely disabled violated due process principles. In answering this question, the court examined the severe consequences which flow from a finding of grave disability. The court considered the loss of liberty associated with extended hospital commitments and the potential for "an unbroken and indefinite period of state-sanctioned confinement." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 224.)[6] Moreover, conservatees may be forced to surrender control of their financial and property holdings and give up the right to practice a profession,

---

[3]The parties discovered the jury's vote during an informal discussion following the mistrial. The Public Guardian does not challenge the accuracy of the vote or the procedure by which Rodney M.'s dismissal motion was made. Nonetheless, our holding should not be construed as permitting the court, once a mistrial is declared, to enter an order or a judgment based on an informal jury poll. The Public Guardian's failure to raise and brief the issue constitutes a waiver on appeal.

[4]We proceed directly to the merits despite Rodney M.'s claim the appeal is moot because the passage of time has rendered his former disability irrelevant. Although the claim may be technically correct, we exercise our inherent discretion to decide the unanimity issue, insofar as it is of significant public interest, is certain to recur in other cases, and may continue to evade review. (See *Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 876-877 [95 Cal.Rptr. 1, 484 P.2d 1345]; *Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1014-1015 [234 Cal.Rptr. 724]; *Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 548 [200 Cal.Rptr. 262].)

[5]Section 5350, subdivision (d) simply states, "The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue whether he or she is gravely disabled. . . . [¶] . . . [¶] This right shall also apply in subsequent proceedings to reestablish conservatorship."

[6]Rodney M.'s superior court file, which we judicially notice (Evid. Code, § 452, subd. (d)), demonstrates just such a pattern. Rodney M. has been involuntarily confined in locked

enter contracts, vote, marry, drive and refuse medical treatment. (*Conservatorship of Roulet, supra,* 23 Cal.3d at pp. 227-228.) In addition, "grave disability proceedings carry special threats to reputation" and often result in the conservatee being unfairly stigmatized by society. (*Id.* at p. 229.) Finding these consequences comparable to those involved in criminal proceedings, *Roulet* determined proof beyond a reasonable doubt of grave disability and jury unanimity are constitutional prerequisites to appointment of a conservator. (*Id.* at p. 235.)[7]

### *Roulet's Impact on the Statutory Framework*

*Roulet* altered the general statutory requirement of a three-fourths majority when the jury finds the proposed conservatee is gravely disabled. However, given the procedural posture of the case,[8] the court had no reason to consider how many jurors are required to find a person is *not* gravely disabled. ▮ As cases are not authority for issues not raised and resolved (*San Diego Gas & Electric Co.* v. *Superior Court* (1996) 13 Cal.4th 893, 942 [55 Cal.Rptr.2d 724, 920 P.2d 669]), we must now decide this issue.

### ▮ *A Finding of No Grave Disability May Be Supported by a Three-fourths Majority*

Careful review of *Roulet* reveals its holding is consistent with allowing nine of twelve jurors to find a person is not gravely disabled. *Roulet* established procedures to ensure "only those truly unable to take care of themselves are being assigned conservators under the LPS Act and committed to mental hospitals against their will." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 225.) Permitting a finding of no grave disability to be based on a three-fourths majority coincides with *Roulet's* goal of minimizing the risk of unjustified and needless conservatorships. It also avoids unnecessary confinement of the proposed conservatee while renewal proceedings are completed. (See *ante,* fn. 6.)

---

facilities (primarily a state mental hospital) since 1990. Had the trial court not granted his motion to dismiss, he would have been subject to confinement until reappointment proceedings were completed. (§ 5361.)

[7]Due process was the principle legal basis for the court's holding. However, the court also pointed to a potential equal protection problem in affording gravely disabled persons less protection against confinement than imminently dangerous persons. (*Conservatorship of Roulet, supra,* 23 Cal.3d at pp. 231-233.)

Another consideration favoring jury unanimity related to the institutionalized bias against proposed conservatees in LPS Act proceedings: "[T]he difficulty of defining mental illness, the factfinders' deference to psychiatric testimony, and the paternalistic attitude of some appointed counsel . . . lends strong support to the conclusion that . . . jury unanimity [is] constitutionally mandated . . . to assure that LPS Act conservatorships are accurately established." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 235, fn. omitted.)

[8]Roulet was challenging a jury finding that she *was* gravely disabled.

The procedure additionally comports with the state's interest in conservatorship proceedings. ██ Unlike criminal prosecutions, which serve the government's objectives of retribution and protecting society, LPS Act conservatorship proceedings are designed "to protect the person from the consequence of his [or her] own infirmity." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 237 (conc. and dis. opn. of Clark, J.).) The state's interest "is solely one of remedial treatment." (*Ibid.*; see also §§ 5350, 5350.1.) ██ *Roulet* teaches the government must tread lightly when imposing its good intentions on unwilling, but nondangerous, persons insofar as " '[t]he greatest dangers to liberty lurk in insidious encroachment by men [and women] of zeal, well-meaning but without understanding.' (*Olmstead* v. *United States* (1928) 277 U.S. 438, 479 [72 L.Ed. 944, 957, 48 S.Ct. 564, 66 A.L.R. 376] (dis. opn. of Brandeis, J.).)" (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 225.) Indeed, "[i]t would be small solace to a person wrongly judged mentally incompetent that his [or her] road to commitment was paved with good intentions." (23 Cal.3d at p. 232.)

At the same time, there is little risk of an erroneous result when at least nine jurors have found the proposed conservatee not gravely disabled. As the United States Supreme Court acknowledged, a nine-to-three jury vote "raises no question of constitutional substance about either the integrity or the accuracy of the majority verdict[.]" (*Johnson* v. *Louisiana* (1972) 406 U.S. 356, 360 [32 L.Ed.2d 152, 158, 92 S.Ct. 1620].)[9]

██ Finally, it is significant ". . . a judicial determination at a conservatorship trial that a person does not then need a conservator does not bar a petition for one in the future if the individual upon whom a conservatorship is sought to be imposed undergoes future changes or is subject to familial or other changes which would require the imposition of a conservatorship for the protection of that person or of society." (*Conservatorship of Davis* (1981) 124 Cal.App.3d 313, 330 [177 Cal.Rptr. 369]; see also *Conservatorship of Baber, supra,* 153 Cal.App.3d at pp. 549-550.) ██ This relaxation of double jeopardy principles in LPS Act conservatorship proceedings ensures needy individuals will receive the treatment to which they are entitled.

## Conclusion

The Legislature's determination that a three-fourths majority vote applies in LPS conservatorship proceedings is eminently sound in the context of

[9]*Johnson* upheld Louisiana laws permitting a criminal conviction based on a nine-to-three jury vote. In so doing, the court declared states may consider such factors as fiscal expense and the efficient administration of justice in determining the number of jurors who must decide. (*Johnson* v. *Louisiana, supra,* 406 U.S. at p. 364 [32 L.Ed.2d at pp. 160-161].) The court below cited these considerations in granting Rodney M.'s motion to dismiss.

finding a proposed conservatee is not gravely disabled. Because 11 people on Rodney M.'s jury believed he was not gravely disabled, the trial court properly granted his motion to dismiss.

Affirmed.

Sills, P. J., and Rylaarsdam, J., concurred.