[No. C055423. Third Dist. July 2, 2008.]

Conservatorship of the Person and Estate of DAVID L.
JAMES D. LIVINGSTON, as Public Guardian et al., Petitioners and
Respondents, v.
DAVID L., Objector and Appellant.

**COUNSEL**

Paul Bernstein, under appointment by the Court of Appeal, for Objector and Appellant.

S. Lynne Klein, under appointment by the Court of Appeal, for Petitioner and Respondent Sandra L.

Linda Zachritz, under appointment by the Court of Appeal, for Petitioner and Respondent Lesley L.

Karen Keating Jahr, County Counsel, and John L. Loomis, Deputy County Counsel, for Petitioner and Respondent James D. Livingston.

## OPINION

CANTIL-SAKAUYE, J.—In this case we resolve the question of whether a prospective conservatee who requests substitute appointed counsel must be given a full opportunity to state the reasons for his request in accordance with *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*).

The Shasta County Public Guardian, James D. Livingston (public guardian), filed a petition to appoint a conservator for David L. David's mother Sandra L. and his sister Lesley L. filed a separate petition in which they sought to be appointed conservators for David. The public defender was appointed to represent David. During the trial on the petition, and in David's absence, the public defender informed the court that David requested substitute counsel. The public defender summarized David's reasons for the request and the trial court denied it.

The trial court found that David was "gravely disabled" as a result of a mental disorder within the meaning of the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5000 et seq.),[1] appointed the public guardian as conservator of his person and estate, and determined that "the least restrictive placement" that would meet his needs was a state hospital.

David appeals, contending his right to effective assistance of counsel was violated when the trial court denied his "*Marsden* motion without affording [him] an opportunity to be heard personally and without assuring that he had properly waived his right to be present." Respondent public guardian does not dispute that a proposed conservatee has the right to effective assistance of counsel, as well as the right to convey to the trial court his dissatisfaction concerning the representation of appointed counsel. The public guardian asserts, however, that "the full array of *Marsden* procedures as applied in the criminal courts," including the opportunity to personally address the court, does not apply to LPS proceedings. Respondents David's mother and sister agree with David that the trial court committed reversible error.

We conclude a prospective conservatee who requests substitute appointed counsel must be given a full opportunity to state the reasons for his request in

---

[1] Hereafter, undesignated statutory references are to the Welfare and Institutions Code.

accordance with *Marsden*, and the trial court's failure to afford David a full opportunity to state his reasons for requesting substitute counsel here violated his right to due process of law.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2006, the public guardian filed a petition to appoint a conservator for David pursuant to section 5350 et seq., alleging he was gravely disabled.[2] In October 2006, David's mother and sister filed a petition seeking to be appointed conservators of David's person and estate in place of the public guardian.

David had been diagnosed as a paranoid schizophrenic, had a long history of mental illness, suffered from multiple sclerosis, was confined to a bed most of the time, and was legally blind. He was living at the Redding Care Center, a skilled nursing facility. Prior to that, he lived with his mother and sister.

The public defender was appointed to represent David.

In September 2006, the trial court appointed the public guardian as temporary conservator of David's person and estate. (§ 5352.1.)

David waived a jury trial on the issue of whether he was gravely disabled, and the issue was tried to the court, along with the issues of "who the conservator would be . . . and placement." (See § 5350, subd. (d).) Dr. John Mahoney, a psychologist with Shasta County Mental Health, and Dr. Kent Caruso, a clinical psychologist retained by the public defender's office, agreed David was gravely disabled and needed a conservator. The doctors disagreed, however, as to the least restrictive and most appropriate placement for David. Dr. Mahoney opined that a state hospital was best suited to care for David given his mental health issues, while Dr. Caruso believed that a highly skilled nursing facility would be "adequate."

An in-home care provider and a social worker testified that David complained that he was being neglected while he was living with his mother and sister. The deputy public guardian who managed David's case during the temporary conservatorship testified that someone with access to David's ATM card withdrew "$20, $30, $40" on a daily basis.

---

[2] Section 5350 provides in pertinent part that "[a] conservator of the person, of the estate, or of the person and the estate may be appointed for any person who is gravely disabled as a result of mental disorder . . . ." As relevant here, "gravely disabled" means "[a] condition in which a person, as a result of a mental disorder, is unable to provide for his . . . basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A).)

David's sister testified that she and her mother withdrew money from David's account at David's request to buy him food, electronics, and other items he requested. She believed that she and her mother should be appointed conservators because they were "the only ones that ha[d] personal knowledge of [his] allergies and what he [could] take and [could not] take."

David testified that he did not have a mental disorder and did not want a conservator. If the court decided to appoint a conservator, he wanted the court to appoint his mother and sister as conservators. He denied that "anything bad happen[ed]" when he was living with his mother and sister. He preferred the Redding Care Center to a state hospital. If he was placed in a state hospital, he would "refuse everything to the day [he died]."

On the third day of trial, the public defender advised the court that David was "suffering from extreme anxiety, stomach issues, and he can't come to court. I know what he wants to say, his mother knows what he wants to say." The following colloquy ensued:

"[PUBLIC DEFENDER]: [I] have been in communication with my client all along, and he has told me that he wants the [c]ourt to appoint a new attorney. He does not want my office. His reasons would be in the nature of a *Marsden* [h]earing. . . . [¶] His reasons for a *Marsden* [h]earing and a new attorney are as follows:

"(1) He feels that I let the two psychologists, Dr. Mahoney and Dr. Caruso, commit perjury when they formed their opinion that my client is gravely disabled and needs to be on a conservatorship. He feels that his position, when he testified, was not adequately explained.

"THE COURT: Would you clarify that?

"[PUBLIC DEFENDER]: I can't. He just wants to embellish more as to why he thinks he's not gravely disabled, why a [s]tate hospital would be a terrible, terrible thing, why he feels his family should be the conservator. [¶] I would inquire of my client's mother and sister if there were any other reasons why he wanted another attorney other than what I have already said.

"[DAVID'S MOTHER]: Well, you covered it pretty well. He's just afraid he didn't get everything out.

"[DAVID'S SISTER]: Yeah, he didn't get to speak.

"[PUBLIC DEFENDER]: He did want to embellish more on his testimony. However, I am prepared to argue on what he said."

The court denied David's request for substitute counsel. In doing so, the court explained that David "has declined to appear in court today. And although he has stated these things to you and you have relayed them to the [c]ourt, these are not the kinds of issues that the [c]ourt feels that there's a complete breakdown of the relationship. [¶] Whether or not the psychologist lied is in the purview of the [c]ourt to make that determination. And if he wanted to testify more, I would allow him to do that today, but he has refused to come to court."

In March 2007, the trial court found David was gravely disabled as a result of a mental disorder. Noting David's mother and sister's "long history of antagonistic relationships with David's prior and current care providers," the court appointed the public guardian conservator of David's person and estate and found that the least restrictive placement that would meet David's needs was a state hospital.[3]

The conservatorship terminated on March 13, 2008.

### DISCUSSION

#### A. *Mootness*

On March 13, 2008, while this case was pending on appeal, the public guardian submitted a letter advising this court "that on February 28, 2008, a petition for reappointment of the conservatorship of the person and estate of David [L.] was granted," and as a result, "th[is] court may wish to consider this appeal moot." Thereafter, we directed the parties to submit supplemental letter briefs "addressing whether the reappointment of the conservatorship, wherein David L. was represented by Cynthia Campbell, renders this appeal or the remedy sought moot."

In his supplemental letter brief, David argues that while "the conservatorship appealed from technically has terminated," the *Marsden* issue is capable of repetition yet avoiding review, and thus, the appeal should not be dismissed. David's mother and sister agree.[4] While the public guardian

---

[3] The court initially found the least restrictive placement was "a State Developmental Center." On March 19, 2007, the court amended its ruling to provide that the least restrictive placement was a state hospital.

[4] David's mother also contends "the placement finding[] and orders" are not moot as the issue of David's placement is not addressed in the reappointment order. She is mistaken. David's placement is addressed in the reappointment order, which designates "a locked facility (IMD)" as "the least restrictive and most appropriate available facility." On our own motion, we augment the record to include the March 3, 2008 order reappointing conservator of person and estate, a copy of which is attached to the public guardian's March 13, 2008 letter. (Cal.

argues the appeal should be dismissed as moot, he "concede[s] that this appeal raises an issue of general public interest (at least . . . as to the applicability of *Marsden* to LPS proceedings) and that it is an issue which is likely to recur."

■ The appeal is moot—the conservatorship from which he appeals has terminated. "Because a conservatorship is relatively brief (one year) in comparison with the appellate process, . . . it [is] likely that this issue—[the application of the procedures set forth in *Marsden* to an LPS conservatorship proceeding]—is one capable of recurring, yet of evading review because of mootness. We therefore conclude it is appropriate to address the issue in this case." (*Conservatorship of Susan T., supra*, 8 Cal.4th at p. 1011, fn. 5; see also *Conservatorship of Rodney M.* (1996) 50 Cal.App.4th 1266, 1268–1269 [58 Cal.Rptr.2d 513]; *Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 86–87 [56 Cal.Rptr.2d 765].)

## B. *Merits*

David claims his right to effective assistance of counsel was violated when the trial court denied his "*Marsden* motion without affording [him] an opportunity to be heard personally and without assuring that he had properly waived his right to be present."

■ In *Marsden*, a criminal defendant argued that "he was deprived of his constitutional right to the effective assistance of counsel because the trial court denied his motion to substitute new counsel without giving him an opportunity to state the reasons for his request." (*Marsden, supra*, 2 Cal.3d at p. 120.) Noting that " ' "[t]he right of a defendant in a criminal case to have the assistance of counsel for his defense . . . may include the right to have counsel appointed by the court . . . discharged or other counsel substituted, if it is shown . . . that failure to do so would substantially impair or deny the right . . . ," ' " our Supreme Court held that a trial court must provide a defendant seeking substitution of counsel an opportunity to state the reasons for his request. (*Id.* at pp. 123–124, quoting *People v. Mitchell* (1960) 185 Cal.App.2d 507, 512 [8 Cal.Rptr. 319], quoting Annot., Right of Defendant in Criminal Case to Discharge of, or Substitution of Other Counsel for, Attorney Appointed by Court to Represent Him (1945) 157 A.L.R. 1225, 1226.)

The rule of *Marsden* is "grounded in the constitutional right to effective counsel" under the Sixth Amendment of the United States Constitution.

Rules of Court, rule 8.155(a)(1)(A).) Moreover, David was free to raise the issue of his placement in the reappointment proceeding; thus, while the placement issue may recur, it will not continue to evade review. (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5 [36 Cal.Rptr.2d 40, 884 P.2d 988].)

(*People v. Dennis* (1986) 177 Cal.App.3d 863, 869 [223 Cal.Rptr. 236].) As the public guardian correctly notes, there is no right to counsel in an LPS proceeding arising from the Sixth Amendment because the Sixth Amendment applies only to "criminal prosecutions." (U.S. Const., 6th Amend.; see also *Conservatorship of Joel E.* (2005) 132 Cal.App.4th 429, 435 [33 Cal.Rptr.3d 704].) An LPS "conservatee is not a criminal defendant and the proceedings are civil in nature." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 537 [53 Cal.Rptr.3d 856, 150 P.3d 738].)

Nevertheless, under the LPS Act, a proposed conservatee has a statutory right to effective assistance of counsel. (§ 5365.) Section 5365 provides in pertinent part: "The court shall appoint the public defender or other attorney for the . . . proposed conservatee within five days after the date of the petition." The duty of counsel to perform in an effective and professional manner is implicit in section 5365. (*Conservatorship of Benvenuto* (1986) 180 Cal.App.3d 1030, 1037, fn. 6 [226 Cal.Rptr. 33].)

■ We need not decide whether a proposed conservatee has a constitutional right to effective assistance of counsel. Even if a proposed conservatee has no constitutional right to effective assistance of counsel, once such a right has been conferred, a proposed conservatee has an interest in it which is protected by the due process clause of the federal Constitution. (*Wilson v. Superior Court* (1978) 21 Cal.3d 816, 823 [148 Cal.Rptr. 30, 582 P.2d 117] ["a substantial state-created right, even though not constitutionally compelled, may not be arbitrarily withheld"]; *People v. Williams* (2003) 110 Cal.App.4th 1577, 1591 [2 Cal.Rptr.3d 890] ["Even though [the defendant's] right to self-representation [in MDO (mentally disordered offender) proceedings] was only of statutory origin, once the state has given him such a right, he had an interest in it protected by due process principles"]; cf. *People v. Otto* (2001) 26 Cal.4th 200, 209 [109 Cal.Rptr.2d 327, 26 P.3d 1061] ["Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP [sexually violent predator] proceeding is entitled to due process protections."].) We conclude under the LPS Act a prospective conservatee's statutory right to effective assistance of counsel is protected by due process.

■ We now turn to the question of what procedures are required to protect David's interest. In *People v. Otto, supra*, 26 Cal.4th at page 209, our Supreme Court identified four factors relevant to making that determination: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals

of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official. [Citation.]"

First, the private interests here are substantial. As our Supreme Court recently observed, "The liberty interests at stake in a conservatorship proceeding are significant. A person found to be gravely disabled may be involuntarily confined for up to one year, and the conservatorship may be extended for additional one-year periods, so long as the person remains gravely disabled. [Citation.] In addition to physical restraint, '[t]he gravely disabled person for whom a conservatorship has been established faces the loss of many other liberties . . . .' [Citation.]" (*Conservatorship of Ben C., supra,* 40 Cal.4th at p. 540, fn. omitted.)

■ Second, we consider the right of a prospective conservatee to fully state the reasons for requesting substitute counsel as an additional procedural safeguard against the erroneous deprivation of the private interests affected by an LPS conservatorship proceeding. Our consideration is guided by the court's reasoning in *Marsden, supra,* 2 Cal.3d at pages 123–124. We see no meaningful distinction between criminal and LPS proceedings insofar as the procedures required to guard against the erroneous deprivation of the right to effective assistance of counsel. In holding that a trial court must provide a criminal defendant seeking substitute counsel an opportunity to state the reasons for his request, the court explained that "[a] trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. . . . A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' " (*Marsden, supra,* at pp. 123–124, quoting *Spector v. Superior Court* (1961) 55 Cal.2d 839, 843 [13 Cal.Rptr. 189, 361 P.2d 909].) Because the reasoning expressed in *Marsden* is equally applicable to LPS conservatorship proceedings, we conclude that the trial court must afford a prospective conservatee a full opportunity to state the reasons for requesting substitute counsel in accordance with *Marsden.*

Third, providing a proposed conservatee seeking substitute counsel such an opportunity furthers the LPS Act's stated purpose of "end[ing] the inappropriate, indefinite, and involuntary commitment" of mentally disordered and developmentally disabled persons (§ 5001, subd. (a)) insofar as it safeguards against the erroneous deprivation of the right to effective assistance of counsel, which is essential to ensure the proposed conservatee is not erroneously deprived of his liberty. (See generally *Conservatorship of Ben C., supra,*

40 Cal.4th at pp. 540–542 [observing that "the Legislature and this court have built several layers of important safeguards into conservatorship procedure," including " 'a right to counsel at trial, appointed if necessary,' " which are designed to "guard[] against erroneous conclusions in conservatorship proceedings"].) Moreover, allowing a prospective conservatee a full opportunity to state his reasons for requesting substitute counsel is unlikely to place a significant fiscal or administrative burden on the government or potentially impede the government's interest in protecting the public safety or the prospective conservatee. (§ 5001, subds. (b), (c), (g).)

Fourth, insofar as failing to provide a proposed conservatee with a full opportunity to state his reasons for requesting substitute counsel adversely impacts his right to effective assistance of counsel, it necessarily "disable[s] him from presenting his side of the story before a responsible government official." (*People v. Otto, supra*, 26 Cal.4th at p. 215.)

■ Having concluded a prospective conservatee has a right under the due process clause to fully state the reasons for requesting substitute counsel in an LPS conservatorship proceeding, we now consider whether that right was violated in this case. We conclude that it was.

Here, David was not present at the hearing on his request for substitute counsel. The trial court's finding that he "declined to appear in court" is not supported in the record. The public defender advised the court that David was "suffering from extreme anxiety, stomach issues, and he can't come to court." There is nothing in the record that refutes the public defender's representation.[5] Accordingly, David was not given a full opportunity to state his reasons for requesting substitute counsel, and thus, was not afforded due process in the determination of his request for substitute counsel. Contrary to the public guardian's assertion, allowing the public defender to effectively argue for and against his own discharge did not afford *David* a full opportunity to state his reasons for requesting substitute counsel.[6]

## DISPOSITION

For the foregoing reasons, we conclude a prospective conservatee who requests substitute appointed counsel must be given a full opportunity to state

---

[5] Indeed, a proposed conservatee must be produced at a hearing to establish an LPS conservatorship, subject to certain limited exceptions. (§ 5350; Prob. Code, § 1825, subd. (a).) Where a proposed conservatee is unable to attend the hearing because of medical inability, such inability shall be established by the affidavit or certificate of a licensed medical practitioner. (Prob. Code, § 1825, subd. (b).)

[6] Because the conservatorship from which David appeals has terminated, we need not address whether he was prejudiced by the error.

the reasons for his request in accordance with *Marsden, supra,* 2 Cal.3d 118, and the trial court's failure to afford David a full opportunity to state his reasons for requesting substitute counsel violated his right to due process of law. Because of the termination of the 2007 conservatorship, however, we dismiss the appeal as moot.

Raye, Acting P. J., and Morrison, J., concurred.