Filed 2/4/15  Conservatorship of T. W.

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| Conservatorship of the Person and Estate of T. W. | C075093 |
| JANET WALKER-CONROY, as Public Guardian, etc., <br><br> Petitioner and Respondent, <br><br> v. <br><br> T. W., <br><br> Objector and Appellant. | (Super. Ct. No. PMH20120001) |

T. W., a Lanterman-Petris-Short Act (LPS)[1] conservatee, appeals the order finding that as a result of a mental disorder, she is gravely disabled and unable to provide for her basic personal needs of food, clothing, and shelter and the appointment of the public

---

[1]    Welfare and Institutions Code section 5000.  Further undesignated statutory references are to the Welfare and Institutions Code.

1

guardian as conservator.  She contends the trial court failed to exercise its discretion in selecting a conservator, and the trial court abused its discretion in failing to analyze her request for substitute counsel.  We agree the trial court erred in failing to exercise discretion in selecting a conservator.  We, however, find the trial court satisfied the requirements of *People v. Marsden* (1970) 2 Cal.3d 118 to consider T.'s request for substitute counsel.  Accordingly, we will affirm the order establishing a conservatorship, but reverse the order designating the public guardian as conservator and remand for further hearing.

BACKGROUND AND PROCEDURAL HISTORY[2]

T. is diagnosed with bipolar disorder.  Since 2010, she has been psychiatrically hospitalized repeatedly throughout the year.  On January 17, 2012, the El Dorado Public Guardian filed a petition seeking a conservatorship of T.  The informal investigation report executed on January 9, 2012, recommends appointment of the public guardian's office as conservator, with no discussion of any other possible conservators.  The follow-up formal investigation report filed on February 12, 2012, contains no discussion or recommendation relative to who should be appointed as the conservator.  On May 1, 2012, the trial court ordered T. be placed under conservatorship of the El Dorado County Public Guardian.

The public guardian filed a petition for reappointment of conservatorship on March 27, 2013.  No investigation reports, formal or informal, were filed relative to the petition for reappointment.

The parties appeared in court on April 25, 2013.  T.'s father, Nate, also appeared. At that hearing, Nate indicated he was interested in being appointed as T.'s conservator. The conservator is responsible for monitoring and handling the conservatee's financial

---

**2**     Because of the nature of the claims on appeal, we do not recount T.'s full mental health history or the facts supporting the finding of grave disability.

needs, medical treatment, and placement. The conservator also assists the conservatee in finding services, accessing transportation, obtaining medical treatment, and getting to appointments and services. T. indicated that she would not object to being conserved if her father were appointed as her conservator. County counsel stated, "We have never in this county had the ability to have a family member act as an LPS conservator . . . because of the nature of this matter, it is not able to happen." T.'s counsel indicated he was unaware of any legal obstacle to Nate being appointed as conservator, but did not think there was anything prohibiting anyone other than the public guardian being the conservator. The trial court responded, "I'm not aware of anything that would allow that [father to be appointed conservator], but, you know, there may be." The parties agreed to continue the matter to allow Nate time to work with counsel to determine if he could become the conservator.

At the June 6, 2013, hearing, T. informed the court that she wanted her public defender replaced. The court asked counsel, "Are there *Marsden* type proceedings that are conducted in these conservatorship cases?" County counsel indicated there was case law which held that the prospective conservatee could not fire counsel. The court responded, "That seems to be my recollection but why don't we have -- I will make some inquiries for the record." The trial court then conducted an inquiry in a closed courtroom.

T. stated she wanted her attorney replaced because she needed an attorney who would really defend her side and not tell her what everybody else wanted her to do. She stated her attorney had told her the doctor, conservator, and nurse needed to agree and she needed to get signatures of 300 people to get out of being in a locked facility. Counsel responded that he had told T., in response to her indicating she had a lot of support for not being conserved, that he could use as much evidence of that position as possible. He also advised her there were critical opinions that would be utilized by the court to determine whether she should be conserved. These included the opinions of doctors, the head nurse, counselors, social workers, and other people who might support

3

her position.  Counsel had followed-up and was investigating whether T. could be placed in a less restrictive placement.  He also explained the procedural posture of the case to T. The court explained to T. that counsel was advising her of the state of the evidence against her, and what she needed to overcome that evidence.  The court noted another attorney would face the same obstacles in producing evidence to overcome the evidence available in support of the conservatorship.  The trial court found there were no grounds to replace counsel.  In open court, the trial court stated, "I have advised [T.] that I am not going to replace her counsel.  Nothing that she has said has convinced me that there's a need to do so, even assuming I can and I'm not convinced that I can because I believe there's case law out there that governs his appointment, and I don't see that there's any basis for replacement of counsel."

At the next hearing, T.'s counsel requested a further continuance of the trial date, because the family, T., and the public guardian's office were working on a placement plan in which T. could be placed with her family.  The county needed to conduct background checks on the family and check the home environments.  The initial plan was to give the placement a 30-day trial.  The transition plan was not successful, and within about four or five days, T. returned to the psychiatric hospital.  The county had not been able to complete any background checks or inspect the homes in that period of time.

The matter ultimately came on for trial in October 2013.  A jury found T. gravely disabled.  The trial court ordered T. be placed in a conservatorship and appointed the public guardian as the conservator.

DISCUSSION

I

*Selection Of Conservator*

T. contends the trial court erred by failing to exercise its discretion in selecting a conservator.  We agree.

4

" 'The reestablishment hearing is conducted according to the same rules that govern the initial establishment of a conservatorship. ([Welf. & Inst. Code,] §§ 5350, subd. (d), 5362, subds. (a), (b); [citations].)' " (*Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 962.) The selection of an LPS conservator is solely in the discretion of the court and must be guided by "what appears to be for the best interests of the proposed conservatee." (Prob. Code, § 1812, subd. (a).) In appointing a conservator, the court must also consider the purposes of protecting the public and treating the conservatee. (§ 5350, subd. (b)(2).) The proposed conservatee's wishes are also relevant to the selection of an LPS conservator, as the court is required to consult the proposed conservatee on a number of issues, including the proposed conservatee's opinion on the appointment of the proposed conservator. (Prob. Code, § 1828, subd. (b)(2).) "The LPS Act requires the conservatorship investigation report to designate the most suitable person to serve as conservator. (§ 5355.)" (*Conservatorship of Walker* (1987) 196 Cal.App.3d 1082, 1100.) Unless the officer providing the conservatorship investigation recommends otherwise, the appointment of an LPS conservator is subject to the list of priorities in Probate Code section 1812. (§ 5350, subd. (b)(1).) That list of priorities includes the parent of the proposed conservatee. (Prob. Code, § 1812, subd. (b)(3).) The public guardian serves as conservator if no other person or entity is willing and able to serve as the conservator. (Prob. Code, § 1812, subd. (b)(5); § 5354.5.) We review the appointment of a conservator for an abuse of discretion. (See *Walker*, at pp. 1100-1101.)

"There are two ways to show an abuse of discretion by the trial court. One way is to show the ruling was whimsical, arbitrary, or capricious, i.e., that the trial court exceeded the bounds of reason. [Citation.] The other way is to show the trial court erred in acting on a mistaken view about the scope of its discretion." (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285.)

5

Here, the record indicates the trial court did not believe it had the discretion to appoint anyone other than the public guardian as T.'s conservator. The trial court said as much when it said it was not aware of anything that would allow that. There was no investigative report on the petition for reappointment, and therefore, no recommendation on this petition as to who should serve as conservator. T.'s father, Nate, made it clear to the court he was willing to serve as the conservator, and the controlling statutes make it clear he was entitled to priority consideration for that role if he was qualified, willing, and able to serve. T. also made it clear she wanted Nate to serve as conservator. Because of the court's error on the law, there was no investigation or consideration of Nate's ability to serve as T.'s conservator, or whether that would have been in T.'s best interest and in the interest of protecting the public. The efforts to determine if T. could be placed with the family and if they could be her primary caretakers were not the equivalent of an investigation of whether Nate was able to serve as conservator. The conservator's role is not to provide the day-to-day care for the proposed conservatee, but rather to monitor and handle the conservatee's finances, medical treatment, access to services, transportation to appointments and need for placement. The trial court's failure to exercise its discretion to determine whether Nate was willing and able to serve as conservator was erroneous. (*Conservatorship of Walker, supra*, 196 Cal.App.3d at pp. 1100-1101.)

## II

### *Substitution Of Counsel*

T. next contends the trial court abused its discretion in failing to analyze her request for substitute counsel under the requirements of *Marsden*. We disagree with T.'s assessment of the record in this case.

Contrary to the trial court's and county counsel's "recollection," "[T]he reasoning expressed in *Marsden* is equally applicable to LPS conservatorship proceedings . . . , the trial court must afford a prospective conservatee a full opportunity to state the reasons for requesting substitute counsel in accordance with *Marsden*." (*Conservatorship of*

*David L.* (2008) 164 Cal.App.4th 701, 711.)  Thus, T. was entitled to a *Marsden* type hearing, at which she could state her reasons for requesting substitute counsel.

"*Marsden* motions are subject to the following well-established rules.  ' " 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.  [Citation.]  A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].'  [Citations.]" '  [Citation.] Denials of *Marsden* motions are reviewed under an abuse of discretion standard. [Citation.]  Denial 'is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.  [Citations.]'  [Citation.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.)

Here, the trial court was wrong in its statement that *Marsden* principles did not apply to LPS proceedings.  Nonetheless, despite its error on the law, the trial court in fact conducted a *Marsden* type hearing, cleared the courtroom and allowed T. to explain why she wanted counsel replaced.  The trial court also sought counsel's responses to T.'s concerns.  The trial court considered T.'s complaints and counsel's responses, then exercised its discretion and determined there was no basis for replacing counsel.

In this case, the court satisfied its duty to fully consider defendant's complaints about counsel despite its lack of understanding of the law.  *Marsden* requires no more.

Furthermore, T.'s complaints did not demonstrate that counsel was performing inadequately or that denial of her motion would substantially impair her right to assistance of counsel.

7

To the extent T. complains the denial of the motion was an abuse of discretion, she has not argued counsel was ineffective or incompetent. Accordingly, "we can infer h[er] *Marsden* motion lacked substance because ineffective assistance of counsel is the foundation which supports the *Marsden* rule." (*People v. Brown* (1988) 46 Cal.3d 432, 461.) Such a claim is not preserved by including in the *Marsden* argument specific complaints about an attorney's performance, i.e., failure to investigate exonerating information or witnesses, failure to meet and confer with defendant, and refusal to prevent a particular defense. On appeal, an ineffective assistance of counsel argument must be supported by a factual and legal analysis of the law concerning reversals due to ineffective assistance of counsel. (E.g., *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [appellate court may disregard contentions not adequately briefed, such as claims perfunctorily asserted without development and without clear indication that they are intended to be discrete contentions].) In any event, we have reviewed the record and conclude T.'s motion fails to show any significant impairment of her right to counsel. (*Brown*, at p. 461.) " 'Accordingly, we find no basis for concluding that the trial court either failed to conduct a proper *Marsden* inquiry or abused its discretion in declining to substitute counsel.' " (*People v. Smith* (1993) 6 Cal.4th 684, 697.)

DISPOSITION

The order establishing a conservatorship is affirmed. The order designating the public guardian as conservator is reversed and the case is remanded to the trial court for further proceedings as to selection of a conservator as provided by law.

8

     ROBIE           , Acting P. J.


We concur:


     MAURO          , J.


     HOCH            , J.

9