[No. C046017. Third Dist. Aug. 31, 2005.]

Conservatorship of the Person and Estate of JOEL E.
SAN JOAQUIN COUNTY PUBLIC CONSERVATOR, Petitioner and
Respondent, v.
JOEL E., Objector and Appellant.

COUNSEL

Paul Bernstein for Objector and Appellant.

Kimberly D. Johnson, County Counsel, for Petitioner and Respondent.

OPINION

**BUTZ, J.**—In this case, we resolve the question of whether a prospective conservatee has the right to represent himself in proceedings to appoint a conservator. In so doing, we touch upon the greater issue of what rights must be afforded a proposed conservatee in civil commitment proceedings.

The San Joaquin County Public Conservator (the public conservator) filed a petition to appoint a conservator for objector Joel E. (Joel).[1] Following a court hearing at which Joel was adjudged gravely disabled, he requested a jury trial on the conservatorship petition. (Welf. & Inst. Code, § 5350, subd. (d).)[2] Prior to trial, Joel informed the trial court that he wished to represent himself. The court denied Joel's request and a jury trial followed, at which he was again found gravely disabled.

■ On appeal, Joel argues he had both a constitutional right and a statutory right to represent himself in these proceedings. We conclude he had neither. Accordingly, we shall affirm the judgment.

---

[1] In the interest of protecting Joel E.'s privacy, his surname has been abbreviated. (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008, fn. 1 [36 Cal.Rptr.2d 40, 884 P.2d 988] (*Susan T.*).)

[2] Undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2003, the public conservator filed a petition to appoint a conservator for Joel pursuant to section 5350 et seq., alleging he was gravely disabled. An investigation report prepared for the hearing on the petition disclosed that Joel had been diagnosed as paranoid schizophrenic, that he had a long history of mental illness and that, subsequent to the filing of the petition, he had been admitted to the county psychiatric health facility because he was "negligent with his basic needs" and had refused medical treatment and board and care placement. In addition, Joel's caseworker reported: "[H]e does not eat adequately and has lost at least thirty pounds in the last three months." Joel told the investigator that "he wanted an 'honest life' but that the people at Mental Health kept him from it and have made it impossible for him to get his degree for the last [25] years."

In August 2003 at the court hearing on the petition, the trial court found Joel gravely disabled and appointed the public conservator as the conservator of his person and estate.

In September 2003, Joel's appointed attorney requested a jury trial on the petition. On the date set for jury trial, Joel's attorney informed the court that Joel "want[ed] to fire [him]." At a closed hearing, Joel told the court that he wanted to represent himself. Joel made some comments about his attorney, then explained: "I right now got things going in Sacramento to where I can put the skids to all kinds of stuff. I can get out—my commission to my God, my people, as I've seen what I'm going through. I hear my God telling me that I've got a commission in life. Part of my duty to my—to the people of California, of which I owe this to the people, and not just the people going through this conservatorship stuff, but the whole people of California which I owe to, and I feel like I can come through for them in any kind of situation, but particularly this, which is my commission to prove that there's nothing to psychiatry." When the court asked Joel if he wanted his attorney discharged and to be allowed to represent himself, Joel replied in part: "I tune into where people are at. I tune in. I don't do wrong at this character assessment, because I feel him out and he's not with me. There's something he's hiding and I know when they hide it. He moves around continuously and avoids me because he's not willing for me to expose his inner self. And if he stays put, I can tune into where he's at. I can tune into that heart."

Joel also explained that, in his prior conservatorship proceedings, "[t]hey turned it all around . . . into a murder trial." Joel reaffirmed his desire to

represent himself, asserting "the people[] need[] . . . just one case where I'm allowed to speak for myself and represent myself."

Noting a "trend . . . to look at these civil commitment[s] differently than in criminal cases," the trial court concluded Joel did not have a constitutional right to represent himself. The court also ruled Joel did not have a statutory right of self-representation because the relevant statute mandated the appointment of counsel. The trial court also noted: "Even if there was a statutory right, I would not exercise my discretion to allow . . . [Joel] to represent himself in the case because of the severity and complexity of the case, because of what has been written in the conservatorship investigation report . . . [and] [b]ecause of the [c]ourt's finding and order . . . that [Joel] is gravely disabled." The court also noted Joel's lack of coherence at times in court and its concern that a jury would "translate that into the notion that he's gravely disabled."

The matter proceeded to jury trial with Joel represented by appointed counsel, and the jury returned a verdict finding Joel gravely disabled.

## DISCUSSION

### I. Mootness

Since the filing of the notice of appeal, Joel's one-year conservatorship has expired.[3] Joel argues, and the public conservator agrees, that although his appeal arguably has become moot, we should reach the issues he has raised. We agree as well. The issue—whether the subject of a conservatorship petition is entitled to represent himself—is likely to recur and, because a conservatorship based on grave disability has a duration of only one year, the conservatorship period will expire in most cases before an appeal can be decided. (See *Susan T.*, *supra*, 8 Cal.4th at p. 1011, fn. 5.) Therefore, we exercise our "inherent discretion" to determine the merits of this appeal. (*Ballard v. Anderson* (1971) 4 Cal.3d 873, 876–877 [95 Cal.Rptr. 1, 484 P.2d 1345].)

### II. Right to Self-representation in Conservatorship Proceedings

■ The Lanterman-Petris-Short Act (the LPS Act) (§ 5000 et seq.) sets forth the procedural and substantive requirements in California for adminis-

---

[3] A petition for reappointment of the conservator was filed and, according to Joel's appellate counsel, "it is [his] understanding that [the conservatorship] has been extended."

tering involuntary treatment to various individuals with mental disorders, including those believed to be "gravely disabled."[4] Joel claims that a proposed conservatee has both a constitutional right and a statutory right to represent himself in proceedings to appoint a conservator, and that the trial court erred by denying him this right. As we shall explain, he is incorrect.

## A. *Constitutional Right of Self-representation*

■ Recognition of the right of self-representation has its origin in *Faretta v. California* (1975) 422 U.S. 806, 818 [45 L.Ed.2d 562, 572, 95 S.Ct. 2525] (*Faretta*), in which the United States Supreme Court held that a criminal defendant has a right of self-representation, and that the Fourteenth Amendment guarantees the same right to criminal defendants in state court. The court analyzed whether there was a right to self-representation in criminal cases independent of the express right to counsel set forth in the Sixth Amendment, explaining: "We do not suggest that this right arises mechanically from a defendant's power to waive the right to the assistance of counsel. [Citation.] On the contrary, the right must be independently found in the structure and history of the constitutional text." (422 U.S. at p. 819, fn. 15 [45 L.Ed.2d at p. 573].) The court relied on both the language of the Sixth Amendment and its historical context in concluding that the right to counsel in criminal prosecutions is "an 'assistance' for the accused, to be used at his option, in defending himself." (422 U.S. at p. 832 [45 L.Ed.2d at p. 580].)

■ However, the Sixth Amendment applies exclusively to "criminal prosecutions" (U.S. Const., 6th Amend.) and does not afford individuals a right to self-representation in civil proceedings (*Baba v. Board of Supervisors of San Francisco* (2004) 124 Cal.App.4th 504, 521–522 [21 Cal.Rptr.3d 428]). Consequently, to successfully claim a Sixth Amendment entitlement to represent himself, Joel must establish that conservatorship proceedings are sufficiently akin to criminal prosecutions to warrant Sixth Amendment protection. A review of federal and state cases dictates against this conclusion.

■ Although the United States Supreme Court has recognized that due process protections must be afforded in civil commitment proceedings (*Addington v. Texas* (1979) 441 U.S. 418, 425–426 [60 L.Ed.2d 323, 330–331, 99 S.Ct. 1804]), the court also has held that "involuntary commitment

---

[4] " '[G]ravely disabled,' " as applied in the present case, means "unable to provide for . . . basic personal needs for food, clothing, or shelter" as a result of a mental disorder. (§ 5008, subd. (h)(1)(A).)

does not itself trigger the entire range of criminal procedural protections." (*Allen v. Illinois* (1986) 478 U.S. 364, 372 [92 L.Ed.2d 296, 306, 106 S.Ct. 2988].) The court has "recognize[d] that a 'civil label is not always dispositive' " in determining whether proceedings are civil or criminal but noted it would "reject the legislature's manifest intent [in this regard] only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " (*Kansas v. Hendricks* (1997) 521 U.S. 346, 361 [138 L.Ed.2d 501, 515, 117 S.Ct. 2072] (*Hendricks*).) Only under these circumstances will proceedings deemed civil by statute be considered criminal "for constitutional purposes." (*Ibid.*)

■ Furthermore, " 'the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment.' " (*Hendricks, supra*, 521 U.S. at p. 363 [138 L.Ed.2d at p. 516]; see *Middendorf v. Henry* (1976) 425 U.S. 25, 37 [47 L.Ed.2d 556, 566, 96 S.Ct. 1281] ["the fact that a proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment"].) Particularly relevant to the proceedings here, the court in *Hendricks* noted: "If detention for the purpose of protecting the community from harm *necessarily* constituted punishment, then all involuntary civil commitments would have to be considered punishment. But we have never so held." (*Hendricks, supra*, at p. 363 [138 L.Ed.2d at p. 516].)

■ Consequently, the Supreme Court has held that "the reasonable-doubt standard is inappropriate in civil commitment proceedings" (*Addington v. Texas, supra*, 441 U.S. at p. 432 [60 L.Ed.2d at p. 335]; cf. *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235 [152 Cal.Rptr. 425, 590 P.2d 1] (*Roulet*) [reasonable doubt standard in civil commitment proceedings mandated by the California Constitution]) and that the privilege against self-incrimination does not apply (*Allen v. Illinois, supra*, 478 U.S. at pp. 372–374 [92 L.Ed.2d at pp. 306–307]). And, in *Hendricks*, the high court held that constitutional proscriptions against double jeopardy and ex post facto application of laws did not apply in proceedings under Kansas's Sexually Violent Predator Act because the intent of the act was to "restrict the freedom of the dangerously mentally ill[,] . . . a legitimate nonpunitive governmental objective." (*Hendricks, supra*, 521 U.S. at p. 363 [138 L.Ed.2d at p. 516]; see also *id.* at pp. 369–370 [138 L.Ed.2d at pp. 519–520].)

It is beyond dispute that the intent of the LPS Act is neither punishment nor deterrence. As summarized by our Supreme Court, "the [LPS A]ct

includes among its goals ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the involuntarily committed through judicial review, and providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program." (*Susan T.*, *supra*, 8 Cal.4th at p. 1009; see § 5001.)

■ Thus, our high court declined to extend the application of the exclusionary rule to civil commitment proceedings, stating that a civil commitment " 'may not reasonably be deemed punishment either in . . . design or purpose,' " and that civil commitment proceedings are not analogous to criminal proceedings. (*Susan T.*, *supra*, 8 Cal.4th at pp. 1015, 1020.) Similarly, the court has refused to apply the ex post facto clause to commitment proceedings concerning sexually violent predators, concluding that such proceedings have the purpose of providing treatment, not imposing punishment. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1170–1172 [81 Cal.Rptr.2d 492, 969 P.2d 584].) Courts of Appeal have followed suit, refusing to apply various criminal procedural protections to civil commitment proceedings. (See, e.g., *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1407–1408 [122 Cal.Rptr.2d 384] [presumption of innocence not applied]; *People v. Robinson* (1998) 63 Cal.App.4th 348, 352 [74 Cal.Rptr.2d 52] [ex post facto motion properly denied]; see also *Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1015–1016 [234 Cal.Rptr. 724] (*Bones*) [Fifth Amendment absolute ban on self-incrimination does not apply to the LPS Act proceedings].)

Joel relies on two California decisions—*Roulet, supra,* 23 Cal.3d 219 and *Conservatorship of Margaret L.* (2001) 89 Cal.App.4th 675, 682 [107 Cal.Rptr.2d 542] (*Margaret L.*)—to support his claim that there is a constitutional right to self-representation in conservatorship proceedings. In *Roulet,* the California Supreme Court held that the due process clause of the California Constitution requires application of the reasonable doubt standard and a unanimous jury verdict in conservatorship proceedings, stressing the need for these procedural safeguards "to guard against incarcerating the wrong person." (*Roulet, supra,* at pp. 230, 235.) Likewise, the court in *Margaret L.* held that *Wende*[5] review is required in conservatorship proceedings because "accuracy of result is of great importance in conservatorships"

---

[5] Under *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], independent appellate review of the record is required when appellate counsel has found no arguable issues.

and "*Wende* review goes to the accuracy of the proceedings."[6] (*Margaret L.*, *supra*, at p. 682.)

■ Although both cases likened civil commitment proceedings to criminal prosecutions in terms of the liberty interests at stake, implicit in these decisions was that the rights at issue served "the need to protect [the prospective conservatee] against *false* confinement." (*Roulet*, *supra*, 23 Cal.3d at p. 227.) Thus, the courts in both cases noted "[t]he law must . . . strive to make certain that only those truly unable to take care of themselves are being assigned conservators under the LPS Act and committed to mental hospitals against their will." (*Id.* at p. 225; see *Margaret L.*, *supra*, 89 Cal.App.4th at p. 681; see also *Conservatorship of Benvenuto* (1986) 180 Cal.App.3d 1030, 1038 [226 Cal.Rptr. 33].)

■ On the other hand, when the rights at issue do not bear on the accuracy of the results, courts have not extended criminal procedural protections to civil commitment proceedings. Thus, for example, the exclusionary rule and the privilege against self-incrimination have been held inapplicable in such proceedings. (*Susan T.*, *supra*, 8 Cal.4th at p. 1020; *Bones*, *supra*, 189 Cal.App.3d at p. 1017.)

We conclude that the right of self-representation falls into the latter category of rights, in which the accuracy of the results is not at stake. As the California Supreme Court aptly noted: "[T]he rule announced for the first time in *Faretta* is not one which followed from constitutional concepts directed to according to an accused protections designed to aid in the search for truth or to insure the integrity of the fact-finding process. . . . '. . . [T]he basic thesis of . . . decisions [recognizing the right to the assistance of counsel] is that the help of a lawyer is essential to insure the defendant a fair trial. . . . [¶] . . . [¶] It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts.'" (*People v. McDaniel* (1976) 16 Cal.3d 156, 164–165 [127 Cal.Rptr. 467, 545 P.2d 843].) Numerous courts have commented that, in most cases, the right of self-representation is the equivalent of a right to a poor defense. (See *Faretta*, *supra*, 422 U.S. at p. 834 [45 L.Ed.2d at p. 581]; *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.* (2000) 528 U.S. 152, 161 [145 L.Ed.2d 597, 606, 120 S.Ct. 684] (*Martinez*).) In sum, affording an individual the right of self-representation generally does little if anything to further the fairness or accuracy of the proceedings.

---

[6] The question of whether *Wende* review is required on appeal from a conservatorship order is pending before the California Supreme Court. (*Conservatorship of Ben C.*, review granted Sept. 15, 2004, S126664.)

In any event, the California Supreme Court's decision in *Roulet, supra,* 23 Cal.3d 219 was based on the California Constitution, which does not provide an independent basis for the right to represent oneself in criminal proceedings, let alone any other proceeding. (*In re Justin L.* (1987) 188 Cal.App.3d 1068, 1073 [233 Cal.Rptr. 632] (*Justin L.*).) In fact, the court has stated that the *only* constitutional basis for the right of self-representation is the Sixth Amendment to the United States Constitution. (*In re Barnett* (2003) 31 Cal.4th 466, 473 [3 Cal.Rptr.3d 108, 73 P.3d 1106].) Therefore, the cases cited by Joel are inapposite.

 The aforementioned authority dispels the notion that a right to self-representation might be founded on constitutional provisions other than the Sixth Amendment, such as the due process clause. As the United States Supreme Court has noted, due process "focus[es] on such safeguards as [a]re necessary to guard against the risk of erroneous deprivation [of life, liberty or property]." (*Allen v. Illinois, supra,* 478 U.S. at p. 374 [92 L.Ed.2d at p. 308].) We have already concluded that self-representation is not a safeguard against this evil.[7]

Furthermore, courts have rejected claims that a constitutional due process right to represent oneself exists outside the context of a criminal prosecution. Thus, in *Martinez,* the Supreme Court held there is no due process right of self-representation in a criminal appeal because "the risk of either disloyalty or suspicion of disloyalty is [not] a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding." (*Martinez, supra,* 528 U.S. at p. 161 [145 L.Ed.2d at p. 606].) The same rationale was applied by this court in concluding there is no due process right of self-representation in juvenile dependency proceedings. (*In re Angel W.* (2001) 93 Cal.App.4th 1074, 1082 [113 Cal.Rptr.2d 659] (*Angel W.*).) This reasoning applies with even greater force in proceedings in which an individual's ability to make judgments about his own welfare is in question. Under such circumstances, a fair proceeding demands legal representation.

 Joel does not point us to any authority supporting a constitutional right of self-representation in a context other than a criminal prosecution,

---

[7] It merits mention that, although a due process right to appointed counsel exists independently of the Sixth Amendment "where the litigant may lose his physical liberty if he loses the litigation" (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 25 [68 L.Ed.2d 640, 648, 101 S.Ct. 2153]), an attendant right of self-representation does not necessarily follow from this right. (See *Faretta, supra,* 422 U.S. at p. 819, fn. 15 [45 L.Ed.2d at p. 573] [constitutional right of self-representation must be established independently of the right to counsel].)

nor has our own research uncovered any such authority.[8] Accordingly, we conclude there is no constitutional right to self-representation in civil commitment proceedings under the LPS Act. We turn to an examination of whether there is a statutory basis for such right.

## B. Statutory Right to Self-representation

Joel claims that, independent of any constitutional basis, he had a statutory right to represent himself in the conservatorship proceedings. We disagree.

▮ Section 5365, which is contained within the chapter of the Welfare and Institutions Code addressing conservatorships for gravely disabled persons, provides: "A hearing shall be held on all petitions under this chapter within 30 days of the date of the petition. *The court shall appoint the public defender or other attorney for the conservatee or proposed conservatee within five days after the date of the petition.*" (Italics added.) The use of the word "shall" renders the statute " 'presumptively mandatory.' " (*Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 87 [56 Cal.Rtr.2d 765].)

There is nothing in the language of section 5365 to suggest that a court has the option of not appointing counsel for the subject of a conservatorship petition based on grave disability or that such person has the option of declining counsel. Nor does any other statute within the chapter addressing this type of conservatorship proceeding suggest that attendant to the requirement to appoint counsel is a right to waive representation. Cases finding a statutory right of self-representation have involved statutes that either require an advisement of the right to be represented by an attorney (implying the corresponding right to decline representation) (*People v. Williams* (2003) 110 Cal.App.4th 1577, 1588, 1591 [2 Cal.Rptr.3d 890] [Penal Code section 2972, subdivision (a), addressing right to counsel in mentally disordered offender proceedings]) or expressly provide for the waiver of counsel (*Angel W., supra,* 93 Cal.App.4th at p. 1083 [Welfare and Institutions Code section 317,

---

[8] We note two decisions, one from this court, that assume without analysis that there is a right of self-representation in other civil commitment proceedings. (*People v. Leonard* (2000) 78 Cal.App.4th 776, 784 [93 Cal.Rptr.2d 180] [commitment proceedings under the Sexually Violent Predator Act]; *People v. Wolozon* (1982) 138 Cal.App.3d 456, 458 [188 Cal.Rptr. 35] [extension of commitment following maximum period of confinement in a not guilty by reason of insanity case].) These cases do not analyze the issue of self-representation in civil commitment proceedings and are not authority for the application of this right in the LPS Act proceedings. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

addressing right to counsel in juvenile dependency proceedings] and *Justin L., supra,* 188 Cal.App.3d at pp. 1073–1074 [former Civil Code section 237.5, addressing appointment of counsel in termination of parental rights proceedings]). The chapter addressing conservatorships based on grave disability is devoid of any suggestion that an individual has the right of self-representation in such proceedings.

▆▆▆ Joel argues that, because Welfare and Institutions Code section 5350 states that the procedures for establishing a conservatorship set forth in the Probate Code are to be followed in conservatorship proceedings based on grave disability, the appointment of counsel in this case is governed by provisions in the Probate Code. However, one of the exceptions to this provision is when "otherwise provided in this chapter." (§ 5350, subd. (h).) Accordingly, provisions in the Probate Code that conflict with the mandatory requirement in Welfare and Institutions Code section 5365 for the appointment of counsel are inapplicable.[9]

Finally, we note that, despite the absence of a constitutional or statutory *right* of self-representation in proceedings such as these, the trial court has discretion to permit a prospective conservatee to represent himself. (See *Martinez, supra,* 528 U.S. at p. 163 [145 L.Ed.2d at pp. 607–608].) Here, the investigation report stated that Joel had " 'paranoid ideations,' " refused medical treatment and was "unable to make judgment decisions for treatment." An order already had been entered appointing a conservator based on a court finding that Joel was gravely disabled. The court also noted its own observations of Joel's lack of coherence at times in court, and its concern that a jury would "translate that into the notion that he's gravely disabled." Based on this information and "the severity and complexity of the case," the trial court stated that, if it had discretion in the matter, it would not exercise it to permit Joel to represent himself. Joel's comments during the hearing at which he asked to represent himself warranted concern as to whether he possessed " ' " 'a rational as well as factual understanding of the proceedings against him.' " ' " (*In re Shawnn F.* (1995) 34 Cal.App.4th 184, 195 [40 Cal.Rptr.2d 263].) The trial court's findings evince no abuse of discretion.

---

[9] Probate Code section 1471, subdivision (a) requires the appointment of counsel if requested by the proposed conservatee. Subdivision (b) of this section allows the court to appoint counsel even if not requested if the court determines the appointment would be "helpful to the resolution of the matter or is necessary to protect the interests of the conservatee or proposed conservatee." Probate Code section 1828, subdivision (a)(6) requires that the trial court advise the proposed conservatee of "the right . . . to be represented by legal counsel if the proposed conservatee so chooses."

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 2005.