IN THE SUPREME COURT OF IOWA

No. 22–0952

Submitted September 13, 2023—Filed October 13, 2023

IN THE MATTER OF V.H., Alleged to be Seriously Mentally Impaired.

V.H.,

Appellant.

---

Appeal from the Iowa District Court for Johnson County, Lars Anderson, Judge.

Respondent appeals the district court ruling denying his motion to represent himself in an involuntary civil commitment proceeding under Iowa Code chapter 229 and the ruling requiring his hospitalization. **AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Charles D. Paul of Nidey Erdahl Meier & Araguás, P.L.C., Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Sarah A. Jennings and Eric H. Wessan, Assistant Attorneys General, for appellee.

**WATERMAN, Justice.**

This appeal presents the question of whether a person facing involuntary civil commitment for mental illness under Iowa Code chapter 229 has a federal constitutional right to self-representation. Iowa Code section 229.9 requires that an attorney represent the respondent at all stages of the proceedings. The respondent in this case, under court-ordered psychiatric treatment, had a history of self-harm, suicide threats, and refusal to take his medications. While represented by counsel, he appealed his commitment order and filed a motion "under the 6th Amendment" to represent himself. The district court denied his motion to proceed pro se and, after a hearing, ordered his continued hospitalization, rejecting his argument that the State failed to show a qualifying recent overt act of self-harm. The respondent appealed both rulings, and we retained the case.

On our review, we hold that respondents in Chapter 229 proceedings do not have a federal constitutional right to represent themselves and forego the legal representation required by the statute. This respondent failed to preserve a claim under the Iowa Constitution. The Sixth Amendment right to counsel and right to self-representation in criminal cases do not apply to this Chapter 229 proceeding. And most courts reaching the issue have rejected a federal due process right to self-representation in analogous mental health civil commitment proceedings. These cases recognize a circularity problem: the court would have to first determine whether the respondents in an involuntary mental health commitment proceeding are competent to represent themselves and waive their statutory right to counsel; yet the validity of that waiver, in turn, could be called into question whenever the court finds the pro se respondent is so seriously mentally impaired as to require involuntary treatment.

On the merits, we determine that the district court's factual findings, including a recent overt act showing dangerousness, are supported by substantial evidence and binding on appeal. We affirm the rulings for the reasons more fully explained below.

## I. Background Facts and Proceedings.

V.H., now age 22, has struggled with mental health problems since childhood, with multiple incidents of suicidal ideation. On May 30, 2019, V.H. began serving consecutive prison sentences totaling up to eight years for convictions on two counts of assault causing injury to peace officers and three counts of first-degree harassment. He was incarcerated at the Iowa Medical and Classification Center (IMCC) in Coralville. There, prison staff began documenting instances of his aggressive and impulsive behavior—including banging his head, damaging property, harassing female staff, and attempting to swallow metal objects. V.H. was placed in restraints at times after physically resisting officers and threatening self-harm.

In the spring of 2020, V.H.'s behavior worsened. He refused to take his medications, claiming he had no need for the treatment. On May 1, V.H. became combative with staff, broke off a sprinkler head, and threatened to swallow it. He also resisted efforts to subdue him, resulting in officers placing him in restraints to administer his medication. Several days later, V.H. threatened to tie a sheet around his neck and was placed in suicide prevention. On May 4, IMCC staff applied for an order of involuntary hospitalization under Iowa Code chapter 229.

Dr. Gary Keller, an IMCC psychiatrist, examined V.H. and diagnosed him with impulse control disorder, borderline intellectual functions, and an unspecified mood disorder exhibiting symptoms of anxiety and depression. A hearing was conducted on May 8 by a judicial hospitalization referee. The referee, relying on Dr. Keller, found V.H. to be seriously mentally impaired, a

danger to himself and others if untreated, and lacking "sufficient judgment to make responsible decisions with respect to [his] hospitalization or treatment." The referee ordered V.H.'s involuntary commitment for mental health treatment within the IMCC.

Over the next two years, a judicial hospitalization referee regularly reviewed V.H.'s commitment, and a series of court orders left his commitment in place. Dr. Keller filed periodic reports[1] supporting V.H.'s continuing hospitalization. We summarize highlights from these reports:

- August 2020: V.H. struggled with his behavior and safety—most notably, banging his head. On two occasions, he required physical restraint by staff to stop him from banging his head. V.H. refused his medications and failed to comprehend his need for treatment.

- November 2020: V.H. repeatedly banged his head and encouraged others to do so. He lacked awareness of his mental health and related actions.

- February 2021: V.H. was placed on suicide watch and injury prevention at least four times from December 2020 to February 2021. His placement stemmed from threatening suicidal actions, such as tying a sheet around his neck and swallowing bolts.

- May 2021: V.H. was again placed on suicide watch and injury prevention four times in a two-week span. He refused oral medications on "a few instances . . . in the past couple weeks." He believed he did not suffer from a mental illness and denied needing any medications.

- August 2021: V.H. had several episodes of banging his head and resisting staff. He required "periodic de-escalation" roughly once a week. V.H. refused his medication at times.

_____

[1]Iowa Code § 229.15(2) (2022) provides:

Not more than sixty days after the entry of a court order for treatment of a patient . . . the medical director of the facility or the psychiatrist or psychiatric advanced registered nurse practitioner treating the patient shall report to the court which entered the order. The report shall state whether the patient's condition has improved, remains unchanged, or has deteriorated, and shall indicate if possible the further length of time the patient will require treatment by the facility.

• November 2021: V.H. physically resisted and spit on staff members. He continued to lack insight and displayed unpredictable behaviors.

• March 2022: V.H. believed he did not have a mental illness and denied needing any medication. He had "many incidents" of refusing to take his medications.

On March 17, 2022, the district court again confirmed V.H.'s continuing commitment. A week later, V.H., by handwritten letter, moved to terminate his commitment and asked to proceed pro se so he could personally cross-examine Dr. Keller. On April 1, Dr. Keller submitted another periodic report diagnosing V.H. with Bipolar Disorder Type 1, Impulse Control Disorder, and Antisocial Personality Disorder. Dr. Keller noted that V.H. committed multiple instances of self-harm—headbanging and fighting with the staff—requiring him to be placed in restraints, had been placed on suicide watch eight times since early February, and still refused his medications.

The judicial hospitalization referee conducted a hearing on April 4, where V.H. was represented by court-appointed counsel Charles Paul. On April 6, the hospitalization referee ordered V.H.'s continuing commitment for hospitalization within the IMCC, relying on the report and testimony of Dr. Keller. The same day, V.H. submitted a handwritten request to appeal to the district court and represent himself, with Paul as standby counsel. Paul, in turn, filed a notice of appeal to the district court and a motion to allow V.H. to proceed pro se, relying on the Sixth Amendment and caselaw. The district court set a hearing for May 24.

Meanwhile, Dr. Keller's next report, dated May 23, noted that V.H. became "defiant" after his April 4 hearing with the referee and refused his oral medications, necessitating "injectable medications" to calm him down. V.H. later got in a fight with another inmate and was placed on security status. On May 17, a week before his scheduled court hearing, V.H. was again banging his head and

refusing his medication, requiring injections. V.H. continued denying he needed medication or treatment, and Dr. Keller maintained his recommendation for his civil commitment.

On May 24, the district court heard the appeal. V.H. appeared with attorney Paul. The court first addressed V.H.'s motion to proceed pro se. The district court denied the motion on the record, noting that Iowa Code section 229.9 requires an attorney to represent the individual at all proceedings relating to their commitment. The district court further stated that the Sixth Amendment "was inapplicable" to a civil commitment proceeding, and "the Fourteenth Amendment substantive due process rights were not offended by the statute's requirement that somebody be represented by counsel." The district court referred to state supreme court cases from Montana and Vermont as persuasive authority denying the right to self-representation in a civil commitment proceeding.[2]

Dr. Keller testified that V.H. still poses a danger to himself and others and that the civil commitment within the prison remains necessary for his treatment. V.H. had the opportunity, through his counsel, to cross-examine Dr. Keller. The court allowed V.H. to make a statement. He argued that Dr. Keller was wrong to continue his civil commitment, and he stated he was not mentally ill and did not need to take any medication, insisting he only has "a little bit of anger problems." Paul argued that the State had failed to establish the "dangerousness" element necessary for civil commitment.

The district court entered its written ruling the next day. The court noted that "[f]or the reasons stated on the record," it denied V.H.'s "request to represent himself" and cited the Montana and Vermont cases in an accompanying footnote.

---

[2]*In re S.M.*, 403 P.3d 324 (Mont. 2017), and *In re G.G.*, 165 A.3d 1075 (Vt. 2017).

Relying on the testimony and reports of Dr. Keller, the court affirmed the referee's decision to continue V.H.'s involuntary commitment. The district court found:

> [T]he State has met its burden. Dr. Keller's testimony established the existence of a mental illness [and that V.H.] . . . lacks judgmental capacity. He refuses medications when he becomes upset, does not believe he has any mental illness, and has shown an inability to control his behaviors (despite his protestations otherwise). When consistently taking medications, [V.H.] has been able to have fairly lengthy stretches of doing well. When [V.H.] becomes upset, he bangs his head (most recently on May 17), which in turn establishes the requisite dangerousness. Absent a commitment order, it is likely that [V.H.] will stop taking his medications and there will be a corresponding deterioration in his behaviors.

V.H. appealed through counsel, arguing the district court erred in denying his right to self-representation under the Sixth and Fourteenth Amendments and erred in finding that a qualifying "recent overt act" supported the involuntary hospitalization because the headbanging the week before the hearing caused no injury. The State argued that the district court correctly denied V.H.'s motion to proceed pro se because Iowa Code section 229.9 requires representation by counsel "and is based on the reality that a person who is within a committal proceeding is not able to provide themselves with representation." The State noted that "even in the criminal process, the right to represent oneself is not absolute and a Judge has the ability to determine if a defendant is capable of conducting their own defense." The State observed that a respondent allowed to waive his right to counsel could later challenge his competency to do so. On the merits, the State argued the headbanging incident a week before the district court hearing met the recency requirement and was "not a onetime event, because in the past there were injuries and bleeding" from his headbanging. In his appellate reply brief, V.H., for the first time, raised the Iowa Constitution in a single sentence, stating without any further elaboration: "The Iowa

Constitution's guaranty to [c]ounsel is broader than the U.S. Constitution applying the right to counsel to any case involving life of [l]iberty of the . . . individual. I[owa] Const. [a]rt. I. § 10." We retained the case.

## II. Standard of Review.

We conduct a de novo review of claims that a constitutional right to self-representation was violated by the district court. *State v. Johnson*, 756 N.W.2d 682, 686 (Iowa 2008); *see also In re Det. of Shaffer*, 769 N.W.2d 169, 172 (Iowa 2009) (reviewing constitutional claims de novo in civil commitment proceedings).

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The elements required for an involuntary commitment must be established by clear and convincing evidence. *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). The district court's findings of fact in a Chapter 229 proceeding "are binding on us if supported by substantial evidence." *Id.* "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence. We will not set aside the trial court's findings unless, as a matter of law, the findings are not supported by clear and convincing evidence." *Id.*

## III. Analysis.

We first address whether the district court correctly ruled V.H. could not represent himself in this Chapter 229 proceeding. We determine V.H. failed to preserve error on his claimed right to self-representation under article I, section 10 of the Iowa Constitution, and the district court correctly denied his claim under the Sixth and Fourteenth Amendments to the United States Constitution.

On the merits, we affirm the district court's ruling continuing V.H.'s involuntary commitment for hospitalization within the IMCC. We agree with the State that substantial evidence supports the district court's findings, including a recent overt act showing dangerousness.

**A. The District Court Correctly Denied V.H.'s Motion to Represent Himself.** V.H.'s right to counsel is undisputed and indeed mandated under Iowa Code section 229.9. This does not mean he has a constitutional right to refuse counsel and represent himself in this civil proceeding for his involuntary commitment. The legislature did not provide a right to waive counsel in chapter 229, and V.H.'s claim under the federal constitution to represent himself fails.

1. *V.H. failed to preserve error on any right to self-representation under article I, section 10 of the Iowa Constitution and forfeited any such claim on appeal.* "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002). In district court, V.H. relied on the Sixth and Fourteenth Amendments to the United States Constitution for his claimed right to self-representation without mentioning the Iowa Constitution.[3] His failure to raise the state constitutional claim in the district court means the claim is not preserved for appellate review.

In addition, V.H. forfeited any such claim on appeal. V.H. first cited article I, section 10 of the Iowa Constitution in the single sentence in his appellate reply brief that we quoted above. That is too late to raise the issue. *See*

---

[3]V.H.'s handwritten letter requesting a court date stated in part, "I would also like to represent myself and remove [prior counsel] from my case. It is part of my constitution to not have legal [counsel] if I do not want it. I would ask the courts to please let me represent myself." Article I, section 10 of the Iowa Constitution was not cited to the hospital referee or district court, and the court made no ruling under the state constitution.

*State v. Basquin,* 970 N.W.2d 643, 659 n.5 (Iowa 2022) ("We have repeatedly held we will not consider issues raised for the first time in a reply brief." (quoting *State v. Carroll,* 767 N.W.2d 638, 644 (Iowa 2009))). V.H. also failed to develop his belated Iowa constitutional claim "in any meaningful way, and we decline to develop these arguments on his behalf." *Hrbeck v. State,* 958 N.W.2d 779, 788 (Iowa 2021); *see also* Iowa R. App. P. 6.903(2)(*g*)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *In re S.M.,* 403 P.3d 324, 327 n.1 (Mont. 2017) ("Because S.M. failed to provide separate legal analysis regarding any possible greater protections the Montana constitution affords [for self-representation in a civil commitment proceeding], the court declines to decide those issues here."). Accordingly, we confine our analysis to V.H.'s claimed federal constitutional right to self-representation.

2. *V.H. has no federal constitutional right to self-representation in this Chapter 229 civil commitment proceeding.* V.H. asks us to extend, for the first time, the federal constitutional right to self-representation in criminal cases to this proceeding for his involuntary civil commitment under Iowa Code chapter 229. He, in effect, asks us to declare unconstitutional the legislature's requirement that attorneys represent respondents in these proceedings. We decline to do so.

Iowa's involuntary civil commitment statute unequivocally requires respondents to be represented by counsel, using the mandatory term "shall": "The respondent's attorney *shall* represent the respondent at all stages of the proceedings, and *shall* attend the hospitalization hearing." Iowa Code § 229.9 (2022) (emphasis added). Before the proceedings commence, the court must determine if the respondent has an attorney "who is able and willing to represent the respondent in the hospitalization proceeding, and if not, whether the respondent is financially able to employ an attorney and capable of meaningfully

assisting in selecting one." *Id.* § 229.8(1). And if the respondent's attorney withdraws, the court "*shall* appoint" another attorney. *Id.* § 229.14A(5)(*c*) (emphasis added). Nowhere in chapter 229 is there any provision allowing the respondent to waive the right to counsel. If the legislature had intended to allow self-representation in Chapter 229 proceedings, it presumably would have said so, as it has in other chapters.[4] V.H. fails to meet his heavy burden to show chapter 229's requirements for representation by counsel violate the Federal Constitution. *See State v. Aschbrenner*, 926 N.W.2d 240, 246 (Iowa 2019) (describing the heavy burden to overcome the presumption of constitutionality).

a. *The Sixth Amendment.* V.H. relies on federal caselaw under the Sixth Amendment that recognizes a right to self-representation in *criminal* cases: *Faretta v. California.* 422 U.S. 806, 807 (1975) (holding that the Sixth Amendment does not permit a state to "hale a person into its criminal courts and there force a lawyer upon him"). In our view, the district court correctly determined the Sixth Amendment is inapplicable to this Chapter 229 civil commitment. The Sixth Amendment provides: "In all *criminal prosecutions,* the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI (emphasis added). The text of this amendment applies only to criminal proceedings, and the Supreme Court has never extended the right to self-representation to civil commitment proceedings. To the contrary, the Supreme Court has recognized that "[i]n a civil commitment[,] state power is not exercised in a punitive sense," and therefore, "a civil commitment proceeding

---

[4]The legislature expressly permits other litigants to waive their right to court-appointed counsel in civil proceedings and represent themselves. *See, e.g.*, Iowa Code § 232.11(2) (governing waiver of right to counsel in juvenile delinquency hearings); *id.* § 600A.6A (allowing court-appointed counsel for an indigent party in a proceeding to terminate parental rights "*if* the person requests appointment of counsel" (emphasis added)); *id.* § 822.3A(2) (allowing an applicant for postconviction relief to "proceed[] without the assistance of counsel").

can in no sense be equated to a criminal prosecution." *Addington v. Texas*, 441 U.S. 418, 428 (1979) (footnote omitted). V.H. cites no federal cases holding that the Sixth Amendment applies in civil mental health commitment proceedings, and we found none.

The United States Court of Appeals for the Eighth Circuit has expressly declined to recognize a Sixth Amendment right to self-representation in civil commitment proceedings. *See, e.g., United States v. Vazques*, 81 F.4th 820, 822 (8th Cir. 2023); *United States v. O'Laughlin*, 934 F.3d 840, 841 (8th Cir. 2019). The *O'Laughlin* court affirmed the denial of the respondent's motion to proceed pro se in challenging his civil commitment, stating:

> Civil commitment involves a loss of liberty, to be sure. But rather than imposing a punitive sentence upon criminal conviction, the civil commitment process provides for release once the individual is no longer a danger to others. Following the logic of the Supreme Court in *Addington*, we hold a civil commitment proceeding under [18 U.S.C.] § 4246 is not a criminal prosecution for purposes of the Sixth Amendment.

934 F.3d at 841 (citations omitted).

We reach the same conclusion under chapter 229. *See In re Det. of Crane*, 704 N.W.2d 437, 438 n.3 (Iowa 2005) (noting that Chapter 229A proceedings "are civil and not criminal in nature, and therefore the Sixth Amendment is not directly implicated"). Other state courts are in accord. *See Conservatorship of Joel E.*, 33 Cal. Rptr. 3d 704, 708 (Ct. App. 2005) ("[T]he Sixth Amendment applies exclusively to 'criminal prosecutions' and does not afford individuals a right to self-representation in civil proceedings." (citation omitted)); *In re S.M.*, 403 P.3d at 327 ("[T]he Sixth Amendment of the United States Constitution does not apply to civil commitment proceedings. By its very language the Sixth Amendment is limited to 'criminal prosecutions.'" (quoting U.S. Const. amend. VI)); *In re G.G.*, 165 A.3d 1075, 1084, 1086 (Vt. 2017) (declining to extend Sixth

Amendment right to self-representation to civil commitment proceedings). V.H.'s Sixth Amendment claim fails.

b. *The Fourteenth Amendment.* V.H. fares no better under the due process clause of the Fourteenth Amendment. He relies heavily on *McNabb v. Osmundson,* where we held that persons facing incarceration in civil contempt proceedings must be provided counsel under the Fourteenth Amendment. 315 N.W.2d 9, 13–14 (Iowa 1982) (en banc). But that case did not involve any claimed right to self-representation. After briefs were filed in V.H.'s case, the Eighth Circuit Court of Appeals enforced a statutory requirement for counsel to handle motions to discharge a civil commitment and held that the person involuntarily committed had no due process right to proceed pro se. *Vazques*, 81 F.4th at 822 (rejecting a Fifth Amendment due process claim in a federal court proceeding). V.H. does not specify whether he is making a procedural or substantive due process claim. The district court regarded his due process claim as substantive but cited cases rejecting each theory: *In re S.M.*, 403 P.3d at 327–31 (rejecting substantive due process claim), and *In re G.G.*, 165 A.3d at 1084–91 (rejecting procedural due process claim). Like the district court, we find these cases persuasive. We address each theory.

(1) *Substantive due process.* V.H. relied on the Sixth Amendment to support his due process claim. But as we have explained, the Sixth Amendment is inapplicable to his civil commitment proceedings. The Montana Supreme Court thoroughly reviewed caselaw, statutes nationwide, and the history of mental health treatment in this country to conclude there is no fundamental right to self-representation in civil commitment proceedings. *In re S.M.*, 403 P.3d at 328–31. We reach the same conclusion.

The *In re S.M.* court addressed whether the asserted right is "objectively deeply rooted in the Nation's history and tradition, and implicit in the concept of

ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 328 (quoting *Washington v. Glucksberg,* 521 U.S. 702, 720–21 (1997)). The Montana court contrasted the right to self-representation in criminal cases, which enjoyed "nearly universal" support, from the right to waive counsel in civil commitment proceedings, where such consensus is lacking. *Id.* at 328–29 (quoting *Faretta,* 422 U.S. at 817). The *In re S.M.* court examined the evolving history of mental health treatment and found that "proceedings for involuntary civil commitment are relatively modern developments." *Id.* at 329. The court concluded:

> [T]his history tells us that self-representation in civil commitment proceedings has not been protected since the beginning of the Nation. In fact, strong procedural safeguards to protect the interests of those facing involuntary civil commitment are a rather recent development and have focused on improving the fairness and accuracy of the process.
>
> The history tells us further that the process afforded to respondents in civil commitment proceedings is the subject of a "considered legislative response," and we should be cautious to extend constitutional protections that "place the matter outside the arena of public debate and legislative action."

*Id.* at 329–30 (quoting *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne,* 557 U.S. 52, 73 (2009) (plurality opinion)). The *In re S.M.* court then aptly observed, "There is a very real risk that self-representation in civil commitment proceedings would increase the likelihood of an unfair or erroneous result rather than enhancing the fairness or accuracy of the proceeding." *Id.* at 330. We agree, and we hold V.H. lacks a fundamental right under the Federal Constitution to represent himself and proceed pro se in this Chapter 229 mental health civil commitment proceeding.

With no fundamental right implicated, the statutory requirement for representation by counsel need only "be rationally related to legitimate government interests." *Glucksberg,* 521 U.S. at 728. We conclude that requiring

a lawyer to represent persons facing involuntary civil commitment is rationally related to the legitimate legislative objective of preserving the "fairness, integrity, and accuracy in the civil commitment process." *In re S.M.*, 403 P.3d at 331. The district court correctly rejected V.H.'s substantive due process claim.

(2) *Procedural due process.* The district court also relied on the Vermont Supreme Court's decision that thoroughly analyzed and rejected a procedural due process right to self-representation in a civil commitment proceeding. *In re G.G.*, 165 A.3d at 1084–91. The *In re G.G.* court determined, as we have, that the Sixth Amendment right to self-representation does not apply in civil commitment proceedings. *Id.* at 1084, 1086. The court treated the argument for self-representation as "grounded in procedural due process." *Id.* at 1084. The court noted the liberty interests at stake under Vermont's civil commitment statute trigger due process protection. *Id.* (citing *Vitek v. Jones*, 445 U.S. 480, 491–92 (1980), and quoting the case for the proposition that "[w]e have recognized that for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection."). So too under Iowa Code chapter 229. *See In re M.T.*, 625 N.W.2d 702, 706 (Iowa 2001) (en banc) ("[A] respondent's liberty interests are at stake at an involuntary commitment hearing.").

"[O]nce it is determined due process applies, the question remains what process is due." *In re G.G.*, 165 A.3d at 1085 (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The *In re G.G.* court applied the *Mathews* three-factor test, *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), examining: "(i) the interests of the individual; (ii) the governmental interest affected; and (iii) the risk of erroneous deprivation of the individual's interests if the right he or she asserts is not recognized, and the probable value, if any, of recognizing that right." 165 A.3d at 1085–86. We too apply the *Mathews* test in

evaluating procedural due process claims under Iowa's civil commitment statutes. *See In re Det. of Williams*, 628 N.W.2d 447, 458 (Iowa 2001) (en banc).

In analyzing the first factor, the *In re G.G.* court recognized that the individual's interest in self-representation in criminal cases is based on their dignity and autonomy to conduct their own defense at trial, and the court noted that the right to self-representation in a criminal case is not absolute but is limited to those who are mentally competent to defend themselves. 165 A.3d at 1087; *see also Indiana v. Edwards*, 554 U.S. 164, 176 (2008). The *In re G.G.* court echoed the Supreme Court's observation:

> [In a criminal case,] a right of self-representation at trial will not affirm the dignity of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel. To the contrary, given that defendant's uncertain mental state, the spectacle that could well result from his self-representation at trial is at least as likely to prove humiliating as ennobling.

*Id.* (quoting *Edwards*, 554 U.S. at 176). The *In re G.G.* court continued, "As is true of a mentally ill criminal defendant, a mentally ill patient who engages in self-representation at a civil hearing runs the risk of undermining his or her dignity and autonomy by presenting the case ineffectively as a result of the underlying mental illness." *Id.* at 1088. We agree.

Relatedly, in analyzing the second factor, the *In re G.G.* court concluded a right to self-representation would undermine the State's interest in assuring the fairness and accuracy of civil commitment proceedings. *Id.* at 1089. The court noted that the legislature mandated representation by counsel in civil commitment proceedings, and the State has a strong interest in enforcing that statutory requirement. *Id.* at 1090. The Maine Supreme Court reached the same conclusion. *In re Penelope W.*, 19 A.3d 813, 815 (Me. 2011) (rejecting right to self-representation in civil commitment hearings). The State of Iowa has the

same interest in enforcing chapter 229's requirement that respondents be represented by counsel.

The *In re G.G.* court also emphasized the circularity problem inherent in allowing self-representation in an involuntary commitment hearing:

> [A] mental health patient who represents him or herself and who is adjudicated in need of commitment or medication would then be in a position to challenge the initial waiver of counsel as not knowing, intelligent or voluntary and thereby claiming a right to a new hearing with counsel.

165 A.3d at 1090. The district court raised the same concern about V.H.'s claim. Recognizing a right to self-representation in a Chapter 229 proceeding would require a separate determination of the respondent's competency to waive counsel. *See State v. Stephenson*, 608 N.W.2d 778, 782–83 (Iowa 2000) (en banc) (reversing a criminal conviction when the district court failed to determine the defendant's mental competency to waive his right to counsel through an appropriate colloquy). As the *In re G.G.* court concluded, the "lack of finality that is threatened by a continuous review of a mental-health patient's competency to waive counsel also implicates other government interests, including expedient resolution of cases . . . and the maintenance of an effective and uninterrupted treatment plan for the patient." 165 A.3d at 1090.

In analyzing the third factor, the *In re G.G.* court concluded that a patient's self-representation would not reduce the risk of an erroneous outcome, stating that "[n]umerous courts have commented that, in most cases, the right of self-representation is the equivalent of a right to a poor defense." *Id.* (quoting *Conservatorship of Joel E.*, 33 Cal. Rptr. 3d at 710). "Rather than enhancing the fairness or accuracy of a proceeding, allowing a mental-health patient to represent him or herself runs the risk of undermining the accuracy of the

proceeding." *Id.* at 1091. We agree that this observation is true "in most cases." *Id.* at 1090.

Several courts have allowed self-representation in civil mental health commitment proceedings under their state constitution. *See, e.g., In re Det. of J.S.,* 159 P.3d 435, 440 (Wash. Ct. App. 2007) (applying state constitutional provision expressly allowing self-representation); *In re S.Y.,* 469 N.W.2d 836, 840 (Wis. 1991) (allowing waiver of right to counsel in civil commitment proceeding based on state constitutional provision expressly allowing self-representation). But V.H. failed to preserve any claimed right under the Iowa Constitution, so those decisions are inapposite.

Other courts have allowed self-representation in civil mental health commitment proceedings through statutory construction. *See, e.g., In re Jesse M.,* 170 P.3d 683, 686, 688 (Ariz. Ct. App. 2007) (holding that "the intended beneficiary of a statute may waive its benefit" so long as they are mentally competent to make that decision); *In re Civ. Commitment of D.Y.,* 95 A.3d 157, 160–61 (N.J. 2014) ("Because we resolve this case by statutory construction, we do not reach the Sixth Amendment and due process issues raised by D.Y."); *In re R.Z.,* 415 N.W.2d 486, 488 (N.D. 1987) ("[A] respondent in a mental health proceeding may waive counsel and assert the right to self-representation, only if the waiver is knowing and intelligent and voluntary and only if it appears on the record."). As discussed above, we construe Iowa Code chapter 229 to *require* counsel, and we distinguish these cases on that basis. We find more persuasive the Vermont and Montana opinions that reviewed the foregoing decisions and declined to follow them. *See In re G.G.,* 165 A.3d at 1087; *In re S.M.,* 403 P.3d at 328–29.

More recently, another court construed its state civil commitment statute as implicitly allowing waiver of counsel based on the statute's conditional

language ("*if* represented by counsel"). *In re Arthur A.,* 457 P.3d 540, 545–47 (Alaska 2020) (emphasis added) (quoting Alaska Stat. § 47.30.725(f)). Such conditional language is not found in Iowa Code chapter 229's provisions requiring representation by counsel, and we distinguish this Alaska precedent for that reason.

We hold that V.H. does not have a procedural due process right under the Fourteenth Amendment to waive the attorney mandated in Iowa Code chapter 229 and represent himself. We note that V.H. was able to consult with his attorney, attend the hearings in person, and make his own statement to the court. We affirm the district court's ruling denying V.H.'s motion to proceed pro se.

**B. The District Court's Factual Findings Supporting V.H.'s Commitment Are Supported by Substantial Evidence.** Our cases require the State to prove a "recent overt act, attempt or threat" to establish that V.H. is a danger to himself or others justifying his civil commitment. *In re J.P.,* 574 N.W.2d at 344 (quoting *In re Mohr,* 383 N.W.2d 539, 542 (Iowa 1986)). V.H. argues his headbanging the week before the district court hearing does not qualify because he did not injure himself on that occasion. The State responds that "[t]his was not a onetime event, because in the past, there were injuries and bleeding." We agree with the State and conclude that the district court's "endangerment" finding is supported by substantial evidence. That finding is binding on appeal. *Id.* at 342.

Our review of the record confirms V.H. had a long history of headbanging, at times resulting in bleeding and injury, with the most recent headbanging occurring on May 17, 2022, the week before the district court found he was a danger to himself. The district court did not view the May 17 headbanging incident in isolation, nor do we. Indeed, V.H. was placed on suicide watch in the

IMCC no less than eight times that spring. The district court's findings are supported by the testimony of V.H.'s treating psychiatrist, Dr. Keller.

A person may be involuntarily committed if they are deemed to possess a "serious mental impairment" or are "seriously mentally impaired." Iowa Code §§ 229.1(20), .6. Section 229.1(20) defines "serious mental impairment."[5] This definition has three elements: the person must be (1) "afflicted with a mental illness"; (2) "lack 'sufficient judgment to make responsible decisions with respect to his or her hospitalization or treatment' "; and (3) "likely, if allowed to remain at liberty, to inflict physical injury on [the person's self] or others or to inflict emotional injury on the designated class of persons." *Mohr*, 383 N.W.2d at 541 (quoting *In re Oseing*, 296 N.W.2d 797, 799 (Iowa 1980)).

---

[5]Iowa Code section 229.1(20) provides:

"Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:

*a.* Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

*b.* Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.

*c.* Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

*d.* Has a history of lack of compliance with treatment and any of the following apply:

(1) Lack of compliance has been a significant factor in the need for emergency hospitalization.

(2) Lack of compliance has resulted in one or more acts causing serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

The third element, known as the "endangerment element," *see In re J.P.*, 574 N.W.2d at 344, requires the threat the patient poses to himself or another "be evidenced by a 'recent overt act, attempt[,] or threat.' " *In re Mohr*, 383 N.W.2d at 542 (quoting *Stamus v. Leonhardt*, 414 F. Supp. 439, 451 (S.D. Iowa 1976)). The element "requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *In re J.P.*, 574 N.W.2d at 344 (quoting *In re Mohr*, 383 N.W.2d at 542). "Our task is to determine whether there is substantial evidence to support [the district court's] finding." *In re Foster*, 426 N.W.2d 374, 377 (Iowa 1988). V.H. challenges only this endangerment element.

The judicial hospitalization referee's April 6, 2022 order found that the State met its burden of proving dangerousness. The referee described V.H. as exhibiting a propensity "to act out and act impulsively," as shown by him "banging his head causing bleeding or brain damage." The referee further noted that V.H.'s agitation, acting out, and headbanging caused him to be put on suicide watch eight times since the beginning of February. The referee stated that V.H. admitted to banging his head.

The district court, in its de novo review, affirmed the referee's finding of dangerousness. At the district court hearing, Dr. Keller testified that a week before his testimony, V.H. had another episode where he became upset and frustrated, resulting in V.H. banging his head out of frustration over not receiving a phone call. Dr. Keller testified about V.H.'s multiple reported instances of headbanging in the past, sometimes resulting in injuries and bleeding. And V.H. admitted in his own statement at the hearing that "sometimes" he bangs his head.

The "overt act" must indicate "past aggressive behavior or threats" that manifest "the probable commission of a dangerous act" by the respondent "that

is likely to result in physical injury." *In re Foster*, 426 N.W.2d at 378. Here, V.H.'s headbanging falls into the category of aggressive behavior that *did* result in physical injury. The district court's factual findings are supported by substantial evidence. We therefore affirm the district court's commitment ruling.

### IV. Disposition.

For these reasons, we affirm the district court's rulings denying his motion to represent himself and requiring his hospitalization within the IMCC.

**AFFIRMED.**